Case 4:22-cv-02420   Document 108   Filed on 08/27/24 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
August 27, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LACI N. BLANCHARD, | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-02420 |
| | § | |
| SANARE ENERGY PARTNERS, LLC, | § | |
| *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant All Coast, LLC's Motion for Summary Judgment on Its Crossclaim for Defense and Indemnity against Defendant Sanare Energy Partners, LLC ("Sanare"). (Dkt. 45). Sanare has not responded. After carefully reviewing the motion, applicable law, and record, the motion is **GRANTED as to the defense from Sanare** and **DENIED as to the indemnity from Sanare**.

### FACTUAL BACKGROUND

**I.     Plaintiff's Allegations**

The Plaintiff in this case alleges the following:

Ronnie Blanchard ("Blanchard") was working for SBS Energy Services, LLC ("SBS") at Main Pass 64-19, an offshore worksite owned and/or operated by Sanare. (Dkt. 74 ¶ 14). While on the worksite, Blanchard was killed when a piece of equipment he was working on suddenly became detached and fell into the ocean taking him with it. (Dkt. 74 ¶¶ 14, 16–17).

SBS had entered into a Master Services Agreement ('MSA') with Sanare related to the worksite where Blanchard was killed and "Plaintiff's claims against SBS arise out of and under the work that was being performed under the MSA." (Dkt. 74 ¶ 5). Plaintiff also alleges that at the time of his death Blanchard had "spent the vast majority of his time working offshore assigned to the LB SWORDFISH," a vessel owned and operated by All Coast, LLC ("All Coast"). (Dkt. 74 ¶¶ 14–15). He slept on the vessel and did "a substantial amount of his work" from the vessel. (Dkt. 74 ¶¶ 15). In this action Plaintiff has brought negligence claims against several defendants, including Sanare and All Coast arising from Blanchard's death. *See* Dkt. 74 ¶ 22 ("The proximate, contributing, and legal causes of Plaintiff's injuries and Mr. Blanchard's death include the negligence of Defendants SANARE, ALL COAST, and NPC.").

II.     **Summary Judgment Evidence**

The undisputed summary judgment evidence establishes the following facts:

All Coast owns and operates a fleet of liftboats in the Gulf of Mexico. (Dkt. 45-1 at 1). All Coast owns and operates the L/B SWORDFISH. (Dkt. 45 at 3). On April 18, 2016, All Coast entered into a Brokerage Agreement with GOL, LLC ("GOL") whereby All Coast appointed GOL as its agent for the purpose of obtaining charters for All Coast vessels. (Dkt. 45 at 2; Dkt. 45-1 at 3–5; *see* Dkt. 45-1 at 3 ("If [All Coast] orally agrees to accept a job offered by [GOL], [GOL] is hereby authorized by [All Coast] to sign, as agent on behalf of [All Coast], a Charter, Work Order or similar agreement, should same be required by the Charterer.")).

On February 20, 2019, GOL and Sanare entered into a Blanket Time Charter agreement ("Charter") that provided for the periodic charter by Sanare of GOL-owned or GOL-brokered vessels. (Dkt. 45 at 3; *see* Dkt. 45-2 at 3–13; Dkt. 45-2 at 3 ("GOL vessels and brokered vessels are hereinafter sometimes collectively referred to as 'vessels' or 'vessel'.")). The Charter defines "Vessel Indemnitees" to be "GOL, the vessels, their owners and operators, masters, crews, nor their respective officers, directors, members, employees and underwriters." (Dkt. 45-2 at 9). It includes the following language:

> The Vessel Indemnitees shall have no liability for injury to, illness of or death of the personnel or employees of [Sanare], or of [Sanare]'s other contractors (excluding the Vessel Indemnitees) or subcontractors or their employees, however said injury, illness or death arises or occurs, whether, in whole or in part, through the negligence of the Vessel Indemnitees, unseaworthiness (pre-existing or not) of the vessel or otherwise. [Sanare] shall protect, defend, indemnify and hold harmless the Vessel Indemnitees from and against all claims, suits, losses, liabilities, demands, costs, damages or expense as a result of such illness, injury or death.

(Dkt. 45-2 at 9–10) (hereinafter "Provision").

The L/B SWORDFISH was on charter working for Sanare at Main Pass 64-19 through All Coast's brokerage relationship with GOL, when the equipment Blanchard was working on fell into the ocean and he was killed. (Dkt. 45 at 4; Dkt. 45-3 at 1–2 (affidavit from L/B SWORDFISH's captain stating that on March 25, 2022, the vessel was working at Main Pass 64-19 pursuant to a time charter agreement between Sanare and GOL, LLC, through All Coast's brokerage relationship with GOL" but "shut down operations due to an accident in which the platform fell over"); *see also* Dkt. 45-2 at 1 (affidavit from GOL's Operations Manager explaining that Charter he executed for GOL with Sanare "served as the basis for the charter of the L/B SWORDFISH")).

## APPLICABLE LAW

Under Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018). The Court does not, however, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts to survive summary judgment." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016), as revised (June 16, 2016) (internal quotation marks and citation omitted).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). If the movant produces evidence that tends to show that there is no dispute of material fact, the nonmovant must then identify evidence in the record sufficient to establish the dispute of material fact for trial. *Celotex*, 477 U.S. at 321–23. The nonmovant must "go beyond the pleadings and by her own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (citing *Celotex*, 477 U.S. at 324). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory

allegations, by unsubstantiated assertion, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, L.L.C.*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

Summary judgment "cannot be supported solely on the ground that a party failed to respond to a motion for summary judgment." *Albanil v. Coast 2 Coast, Inc.*, 444 F. App'x 788, 808 n.21 (5th Cir. 2011) (quoting in parenthetical *John v. State of La.*, 757 F.2d 698, 709 (5th Cir.1985)). "Instead, summary judgment should only be granted in such a case if 'the moving party discharges its initial burden' of showing that there is no genuine dispute as to any material fact." *Alsobrook v. GMAC Mortg., L.L.C.*, 541 F. App'x 340, 342 (5th Cir. 2013) (quoting *John*, 757 F.2d at 709). "Where, as here, a plaintiff does not file an opposition to a defendant's motion for summary judgment, a district court may properly take the facts put forward by defendant in support of his motion for summary judgment to be undisputed." *White v. Coffield Med. Staff*, No. 21-40211, 2022 WL 1056103, at *2 (5th Cir. Apr. 8, 2022) (quoting *Eversley v. Mbank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988)).

## ANALYSIS

Pursuant to the Charter, Sanare must defend All Coast in this suit.

The Charter at issue in this case states that it "shall be construed in accordance with the admiralty and maritime laws of the United States of America." (Dkt. 45-2 at 12); *see also Wilson v. JOB, Inc.*, 958 F.2d 653, 655 (5th Cir. 1992) ("As a charter agreement for a vessel, the [] charter is a maritime contract and the reciprocal indemnity clauses which it contains are to be construed according to maritime law."). "When interpreting maritime contracts, federal admiralty law rather than state law applies." *Int'l Marine, L.L.C. v. Delta*

*Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013). "General maritime law stems from the maritime jurisprudence of the federal courts, and is an amalgam of traditional common law rules, modifications of those rules, and newly created rules drawn from state and federal sources." *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011) (internal quotation marks omitted).

The Fifth Circuit "has consistently held that when interpreting a contract under general maritime law, 'a court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous.'" *Curtis Callais Welding, Inc. v. Stolt Comex Seaway Holdings, Inc.*, 129 F. App'x 45, 54 (5th Cir. 2005) (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)). "A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981).

The relevant portions of the Charter are unambiguous, and a clear reading of them demonstrates that Sanare must defend All Coast in the instant case. *See Wilson*, 958 F.2d at 657 (5th Cir. 1992) ("[A] clear reading of the unambiguous, relevant portions of the charter . . . resolves this dispute."). The word "vessels" in the Charter covers GOL vessels and brokered vessels (Dkt. 45-2 at 3), and the Charter defines "Vessel Indemnitees" to include "the vessels" and "their owners and operators" (Dkt. 45-2 at 9). The Provision thus

unambiguously states that brokered vessels, their owners, and their operators shall have no liability for injury to or death of Sanare's "other contractors (excluding the Vessel Indemnitees) or subcontractors or their employees," however said injury or death occurs and that Sanare "shall protect, defend, indemnify and hold harmless" the brokered vessels, their owners, and their operators from all claims, suits, demands, costs, etc. "as a result of such . . . injury or death." (Dkt. 45-2 at 9–10).

Plaintiff alleges that on March 25, 2022, Mr. Blanchard, employed by SBS, was working on equipment on Sanare's offshore worksite when he died, and that SBS and Sanare had entered into a master services agreement "related to the project which was ongoing at the time of the incident." (Dkt. 74 ¶ 5). SBS thus falls into the position of an "other contractor[] or subcontractor[]" within the Provision, and Mr. Blanchard is an "employee" of such contractor. The L/B SWORDFISH falls within the Provision because it was a "brokered vessel" within the meaning of the Charter. Specifically, it was on charter working for Sanare on March 25, 2022, through All Coast's brokerage relationship with GOL. *See* Dkt. 45-2 at 3 ("GOL, on its own behalf for the GOL vessels and in its broker capacity for the brokered vessels, agrees to time charter and [Sanare] agrees to hire such of the vessels as GOL and [Sanare] shall designate subject to the [Charter's] terms and conditions"). Plaintiff's lawsuit also falls within the Provision as this negligence suit is a "result of" Sanare's contractor's employee's death. Accordingly, the Provision unambiguously provides that Sanare "shall" defend the owners and operators of the L/B SWORDFISH (*i.e.*, All Coast).

The Court's analysis is consistent with the holding in *Batiste v. Quality Constr. & Prod. LLC*, 327 F. Supp. 3d 972 (W.D. La. 2018). In *Batiste*, the plaintiff, who was employed by a subcontractor for the first entity ("Platform Owner"), was working on a construction project on an offshore platform in the Gulf of Mexico that was owned and operated by the Platform Owner. *Id.* at 974. He claimed to be injured while standing on the deck of a vessel engaged in the task of backloading material baskets to the vessel from the platform. *Id.* The vessel was owned by a second entity ("Vessel Owner") and had been time-chartered to the Platform Owner through an agreement brokered by a third entity ("Broker"). *Id.* The plaintiff sued, *inter alia*, the Platform Owner and the Vessel Owner. *Id.* Both moved for summary judgment on the plaintiff's claims, and both motions were granted. *Id.* at 974–75.

The Vessel Owner then moved for summary judgment on its crossclaim against the Platform Owner for defense and indemnity. *Id.* It sought defense and indemnity pursuant to a master time charter agreement that was entered into between the Broker and Platform Owner, and an agreement executed between the Broker and Vessel Owner whereby the Vessel Owner's vessel was chartered to work for the Platform Owner per the terms of the master time charter agreement. *Id.* at 976. The Platform Owner filed a cross-motion for summary judgment, arguing that the Vessel Owner was not entitled to contractual defense or indemnity. *Id.* at 975. The relevant part of the master time charter agreement stated the following:

> **Neither** OWNER [Broker], its officers, directors, employees, **the vessel, her owners, operators**, master, and crew, nor the underwriters of any of the foregoing **shall have any responsibility or liability for any claim** . . . **for any injury**, illness,

> disease or death **of employees of CHARTERER [Platform Owner], its other contractors, or their employees** or agents, **and CHARTERER [Platform Owner] shall defend, indemnify**, and hold harmless OWNER [Broker], its officers, directors, employees, **the vessel, its owners, operators**, master, and crew, and the underwriters of each of the foregoing **from** and against **any such claim** . . . .

*Id.* at 977 (emphasis added).

The court explained, *inter alia*, that (a) since plaintiff was an employee of one of the Platform Owner's subcontractors, his claim was a claim for injury to an employee of one of the Platform Owner's "other contractors" that fell within the parameters of the indemnity provision; and (b) the language used in the indemnity provision "clearly obligated" the Platform Owner to indemnify members of two groups: (1) the Broker, its officers, directors, and employees, and (2) "the vessel, *its* owners [Vessel Owner], operators [Vessel Owner], master, and crew." *Id.* at 977–978 (emphasis in original). The court concluded that the Platform Owner was "obligated to defend and indemnify" the Vessel Owner "under the plain and ambiguous language of the master time charter agreement." *Id.* at 979.

In this case the parties have not established the facts regarding liability. Accordingly, while this Court finds that Sanare has a duty to *defend* All Coast, it cannot evaluate at this juncture whether Sanare has a duty to *indemnify* All Coast.

## CONCLUSION

All Coast's motion for summary judgment (Dkt. 45) is **GRANTED in part** and **DENIED in part.** The Court **GRANTS** the motion as to Sanare's duty to defend All Coast. The Court **DENIES** the motion as to Sanare's duty to indemnify All Coast without

prejudice to All Coast re-urging it at such time when the indemnity issue is amenable to resolution.

SIGNED at Houston, Texas on August 27, 2024.

*George C. Hanks Jr.*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE