IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LACI N. BLANCHARD, Individually and as next friend of W.B., Surviving Minor Child of RONNIE P. BLANCHARD, JR. | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:22-cv-2420 |
| SANARE ENERGY PARTNERS, LLC, et al., | § § § | |
| *Defendants.* | § § | |

## PLAINTIFF'S MOTION TO REMAND

Plaintiff Laci N. Blanchard hereby moves this Court to remand this Jones Act and general maritime law action to the 80th Judicial District Court of Harris County, Texas.

## <u>Table of Contents</u>

Table of Contents ........................................................................................................II

Table of Authorities.................................................................................................III

Introduction............................................................................................................. 1

Stage and Nature of the Proceeding ........................................................ 2

Statement of Facts ............................................................................................ 4

Statement of the Issues.................................................................................. 5

Standard of Review ......................................................................................... 6

Summary of the Argument ........................................................................... 6

Argument .............................................................................................................. 8

A.    The Court should decide Plaintiff's motion to remand before ruling on SBS Energy's motion for summary judgment............................................................. 8

B.    The sole basis of federal jurisdiction is no longer relevant. ............................... 9

C.    Plaintiff's Jones Act claims should be remanded. ............................................. 9

D.    Plaintiff's general maritime claims should also be remanded. ......................... 17

E.    SBS Energy has the burden to establish federal jurisdiction. ........................... 18

F.    Alternatively, there is no diversity.................................................................... 19

Conclusion ......................................................................................................... 19

Certification of Service............................................................................. 21

## CASES

*Alexander v. Express Energy Servs. Operating, L.P.*,
   784 F.3d 1032 (5th Cir. 2015) ................................................................ 10

*Barrett v. Chevron U.S.A., Inc.*,
   781 F.2d 1067 (5th Cir. 1986) ........................................................ 13, 14

*Becker v. Tidewater, Inc.*,
   335 F.3d 376 (5th Cir. 2003) .................................................................... 9

*Cormier v. Chet Morrison Contractors, LLC*,
   85 F. Supp. 3d 880 (S.D. Tex. 2015) ....................................................... 6

*Dassinger v. S. Cent. Bell Tel. Co.*,
   505 F.2d 672 (5th Cir. 1974) .................................................................... 8

*De Aguilar v. Boeing Co.*,
   47 F.3d 1404 (5th Cir. 1995) .................................................................... 6

*Dwyer v. Ligon Specialized Haulers*,
   542 F. Supp. 638 (M.D. La. 1982) ....................................................... 7, 8

*Foulk v. Donjon Marine Co.*,
   144 F.3d 252 (3d Cir. 1998) ................................................................... 13

*Grab v. Boh Bros. Const., LLC*,
   506 Fed. App'x 271 (5th Cir. 2013) ...................................................... 13

*Gregoire v. Enterprise Marine Services, LLC*,
   38 F. Supp. 3d 749 (E.D. La. 2014) ...................................................... 17

*Howery v. Allstate Ins. Co.*,
   243 F.3d 912 (5th Cir. 2001) .................................................................. 18

*Jackson v. Am. Bureau of Shipping*,
   No. CV H-20-109, 2020 WL 1743541 (S.D. Tex. Apr. 8, 2020) ................ 17

*Luwisch v. Am. Marine Corp.*,
   956 F.3d 320 (5th Cir. 2020) .................................................................... 9

*Matter of Ingram Barge Co., LLC*,
   No. 22-30577, 2023 WL 6123107 (5th Cir. Sept. 19, 2023) ..................... 9

*Mims v. Deepwater Corrosion Services, Inc.*,
    90 F. Supp. 3d 679 (S.D. Tex. 2015)............................................................................17

*Osprey Underwriting Agency, Ltd. v. Nature's Way Marine*, *LLC*,
    642 F. App'x 391 (5th Cir. 2016) (per curiam)..........................................................10

*Santee v. Oceaneering Int'l, Inc.*,
    110 F.4th 800 (5th Cir. 2024)..........................................................................10, 11

*Santee v. Oceaneering Int'l, Inc.*, No. CV H-21-3489, 2022 WL 20742519 (S.D. Tex.
    Jan. 27, 2022), reconsideration denied sub nom. *Santee v. Oceaneering Internationa,*
    *Inc.*, No. CV H-21-3489, 2022 WL 20742688 (S.D. Tex. Apr. 29, 2022) ....................13

*Shultz v. Hercules Offshore, Inc.*,
    No. 1:14-CV-188, 2014 WL 2041282 (E.D. Tex. May 15, 2014) ..................................9

*Spivey v. Chitimacha Tribe of Louisiana*,
    79 F.4th 444 (5th Cir. 2023) .............................................................................8

*Stewart v. J.E. Barries, Inc.*, Cause
    No. 1:06-CV-187-LG-JMR, 2007 WL 2915033 (S.D. Miss. 2007) ..............................13

*Targa Midstream Services LLC v. Crosstex Processing Services LLC*, CV H-14-2256,
    2014 WL 12672258 (S.D. Tex. Nov. 25, 2014) ..........................................................6

*Wilcox v. Wild Well Control, Inc.*,
    794 F.3d 531 (5th Cir. 2015)..............................................................................14

*Withhart v. Otto Candies, LLC*,
    431 F.3d 840 (5th Cir. 2005)..............................................................................10

*Ziegler v. Champion Mortg. Co.*,
    913 F.2d 228 (5th Cir. 1990)...............................................................................8

<u>**STATUTES**</u>

28 U.S.C. § 1331 ...............................................................................................16

28 U.S.C. § 1441(a).............................................................................................16

**INTRODUCTION**

Federal jurisdiction is an ongoing inquiry that should be revisited here. As the Court knows, this case is about Ronnie Blanchard, a Jones Act seaman who tragically died while working off the coast of Louisiana. In March 2022, Mr. Blanchard was working on a hydraulic workover unit attached to a wellhead. He was tied off to the unit via his fall protection harness. The unit was not properly attached to the wellhead, tipped over, and dragged Mr. Blanchard into the Gulf where he drowned.

Mr. Blanchard's surviving widow, Plaintiff Laci Blanchard (a Louisiana resident), filed this case under the Savings to Suitors clause against Sanare Energy Partners LLC in Texas state court. Sanare removed the suit based on OCSLA. *See* Dkt. 1. Right after, Ms. Blanchard amended her claims. *See* Dkt. 11. Her amended complaint including Jones Act and general maritime claims against SBS Energy Services, LLC, Mr. Blanchard's employer. Now the only two parties remaining in the case are Plaintiff and SBS Energy. Ms. Blanchard now moves to remand this Jones Act and general maritime case to state court.

It is "axiomatic" that cases arising under the Jones Act and general maritime law can be brought in either state or federal court. When filed in state court, these cases are not removable. If there is no independent basis for federal jurisdiction, remand is required. Sanare, the removing party, has settled and has been dismissed from the suit. Thus, the original basis for removal (OSCLA) is no longer in play. The only claims that remain are Plaintiff's Jones Act and general maritime claims against SBS Energy. Because Mr. Blanchard was a Jones Act seaman, Plaintiff's Jones Act and general maritime claims must

be remanded. And to remove any doubt as to whether this Court has jurisdiction over the remaining claims, both parties are Louisiana residents, thus, there is no diversity either. For the reasons explained in more detail below, the Court should remand this case to state court.

<u>**STAGE AND NATURE OF THE PROCEEDING**</u>

In June 2022—just months after the incident—Plaintiff Laci Blanchard sued Sanare Energy Partners LLC in Texas state court invoking the Savings to Suitors clause. *See* Dkt. 1-2. Sanare Energy Partners, the original defendant, removed the case under OCSLA. *See* Dkt. 1. Plaintiff amended her complaint on August 16, 2022, adding defendants All Coast, LLC, and SBS Energy Services, LLC. *See* Dkt. 11. The amended pleading included Jones Act and general maritime claims against SBS Energy.

Three days later, Plaintiff requested a pre-motion conference on a proposed motion to remand. *See* Dkt. 12. In the request letter, Plaintiff argued that the Jones Act and general maritime law governed her claims and that the case should be sent back to state court. *See id.* at 2. At the conference, the Court ruled that Plaintiff could proceed with discovery on Mr. Blanchard's seaman status and move to remand later if appropriate. *See* Dkt. 15.

SBS Energy then moved to dismiss or transfer. *See* Dkt. 24. In that motion, SBS Energy argued that a Texas court could not exercise jurisdiction over the company. Based on the local rules requiring pre-motion conferences for requests like the one made by SBS Energy, the Court struck the motion. *See* Dkt. 25. In response, SBS Energy filed a request for a pre-motion conference. *See* Dkt. 28.

During the pre-motion conference the Court ordered SBS Energy to provide jurisdictional discovery to Plaintiff and set deadlines for jurisdictional briefing. *See* Minute

Entry, Nov. 1, 2022. SBS Energy renewed its motion to dismiss on November 11, 2022. *See* Dkt. 34. In early December 2022, Plaintiff filed a voluntary dismissal as to SBS Energy. *See* Dkt. 36.

While this case was still pending, Plaintiff sued SBS Energy and Kinsale Insurance in Louisiana state court. On February 29, 2024, in this case, Sanare filed a third-party complaint against SBS Energy. *See* Dkt. 52. The next day, Plaintiff amended her complaint here a second time bringing claims once again against SBS Energy based on the new jurisdictional allegations brought by Sanare. *See* Dkt. 54. That same day, SBS Energy improperly removed the Louisiana state case to the Eastern District of Louisiana. *See* Dkt. 2, Civ. A. No. 2:24-cv-00534. Plaintiff moved to remand three weeks later in that court. *See* Dkt. 11, Civ. A. No. 2:24-cv-00534. Four days later, on March 26, 2024, SBS Energy agreed to jurisdiction in Texas—likely because SBS knew it had incorrectly removed the case in Louisiana—and filed an answer here. *See* Dkt. 65. Plaintiff subsequently dismissed the Louisiana case.

That said, at this stage, SBS Energy is the only remaining defendant, the others have settled. SBS Energy has moved for summary judgment (*see* Dkt. 125), to which Plaintiff has filed a response. *See* Dkt. 128. The motion is still pending. Plaintiff now moves for an order remanding the case to state court.

<u>**STATEMENT OF FACTS**</u>[1]

Decedent Ronnie Blanchard was killed when a hydraulic workover unit he was tied

to tipped over and fell into the Gulf off the coast of Louisiana. *See* Dkt. 128 at 3.



*Figure 3: HWU Makeup Process by Day*



*Figure 4: HWU After Falling into the GOM*

---

[1] For a more detailed recitation of the facts, *see* Plaintiff's response to SBS Energy's motion for summary judgment. Dkt. 128. Citations to the general facts are made to that response and the corresponding exhibits, which Plaintiff incorporates here by reference.

The incident occurred several days into a "rig-up" job on a wellhead. *Id.* at 5. Mr. Blanchard was tied to the HWU near the top, approximately 100 feet in the air by his fall protection harness. *Id.* at 6. Around 8:30 a.m. on the morning of March 25, 2022, Mr. Blanchard unshackled the crane from the top of the jack. *Id.* at 6. Once the crane line was unhooked, the 130,000-pound unit began to sway before tipping over. *Id.* Mr. Blanchard was sucked into the water with the unit and could not save himself. *Id.*

SBS was responsible to perform a field test, inspect the casing, and follow up with additional testing of the wellhead as needed. *Id.* at 9. SBS performed a field survey, but there is no evidence it conducted anything more than a visual inspection of the wellhead. *Id.* But even a visual inspection should have alerted SBS to the condition of the wellhead and the fact that it could not hold the entire weight of the HWU. *Id.* at 10. After the incident, it was discovered that the failure point was just above the water line. *Id.* at 11. The casing was so corroded that the incident was inevitable. *Id.* at 12. Evidence shows that SBS knew that the conditions were dangerous and that the wellhead would likely not support the weight of the equipment, yet it chose to go forward with the project. As a result, Mr. Blanchard was killed. *Id.* at 14.

## STATEMENT OF THE ISSUES

Plaintiff Laci Blanchard and Defendant SBS Energy are the only remaining parties in this Jones Act and general maritime case arising out of the wrongful death of Decedent Ronnie Blanchard. Mr. Blanchard, a Jones Act seaman, drowned when the equipment he was tied to broke free from a wellhead dragging Mr. Blanchard into the Gulf. Jones Act and general maritime claims are at home in state court where there is no independent basis

for federal jurisdiction (such as diversity or federal question). In short, the issue here is simple: should the Court remand Plaintiff's Jones Act and general maritime claims where there is no independent basis for federal jurisdiction?

*Suggested Answer*: Yes.

## STANDARD OF REVIEW

"The plaintiff in a removed action may challenge the assertion of federal jurisdiction through a motion to remand." *Cormier v. Chet Morrison Contractors, LLC*, 85 F. Supp. 3d 880, 882 (S.D. Tex. 2015). The party opposing remand "bears the burden of showing that federal jurisdiction exists[.]" *Targa Midstream Services LLC v. Crosstex Processing Services LLC*, CV H-14-2256, 2014 WL 12672258, at *2 (S.D. Tex. Nov. 25, 2014) (internal citations and quotations omitted) (emphasis added); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). Generally, "[f]ederal removal jurisdiction is to be narrowly construed, with all ambiguities resolved against the existence of jurisdiction and in favor of remand." *Cormier*, 85 F. Supp. 3d at 882.

## SUMMARY OF THE ARGUMENT

Plaintiff's Jones Act and general maritime claims should be remanded to state court. Plaintiff and SBS Energy are the only parties remaining in this wrongful death case arising from an offshore incident where Ronnie Blanchard drowned after being dragged into the Gulf while attached to a large piece of well equipment. Sanare, the original moving party, has settled its claims, therefore, OCSLA (the basis for Sanare's removal) is no longer relevant to the jurisdictional issue.

Recently, SBS Energy moved for summary judgment. That motion should be decided only if the Court determines that it has jurisdiction. Plaintiff argues that with Sanare (as the platform owner) out of the case, there is no independent basis for federal jurisdiction. Accordingly, the Court should defer its ruling on the summary judgment motion and, after issuing a remand order, deny SBS Energy's motion for summary judgment as moot.

Remand is appropriate because based on the pleadings and evidence in the record, Mr. Blanchard was a Jones Act seaman when the incident occurred. Mr. Blanchard started his employment with SBS Energy a few short days before he was killed. During that time, Mr. Blanchard spent over 30% of his time working offshore. He was subject to the perils of the sea. His death gives rise to Jones Act and general maritime claims.

It is axiomatic that Jones Act and general maritime claims belong in state court if that is where the plaintiff decides to file. Here, Plaintiff filed her case in state court invoking the Savings to Suitors clause. Thus, Ms. Blanchard can move to remand her claims to state court. SBS Energy carries the burden to establish federal jurisdiction. But based on the pleadings and the evidence, SBS Energy will not be able to show that this Court has an independent jurisdictional hook that can keep the case here. Thus, the Court should remand Plaintiff's Jones Act and general maritime claims to Harris County judicial district court.

## ARGUMENT

**A.     The Court should decide Plaintiff's motion to remand before ruling on SBS Energy's motion for summary judgment.**

As an initial matter, Plaintiff submits that the Court must decide her motion to remand before it turns to SBS Energy's pending motion for summary judgment. *See*, *e.g.*, *Dwyer v. Ligon Specialized Haulers*, 542 F. Supp. 638, 642-43 (M.D. La. 1982) (noting that "The Fifth Circuit Court of Appeals has [] repeatedly stated that where a court does not have subject matter jurisdiction . . . the court does not have the power to render a summary judgment in that case.").

It is well settled that "[f]ederal courts are courts of limited jurisdiction[.]" *Ziegler v. Champion Mortg. Co.*, 913 F.2d 228, 229 (5th Cir. 1990). Thus, "when a district court determines that it lacks subject matter jurisdiction over a removed case, it *must* remand." *Spivey v. Chitimacha Tribe of Louisiana*, 79 F.4th 444, 447 (5th Cir. 2023). It follows then, that where jurisdiction is lacking, the district court has "no power to render a judgment on the merits against either party." *Dassinger v. S. Cent. Bell Tel. Co.*, 505 F.2d 672, 674 (5th Cir. 1974). Accordingly, a ruling on SBS Energy's motion for summary judgment should only come after the Court has answered the jurisdiction question in the affirmative. *Dwyer*, 542 F. Supp. at 643 (where on a motion to remand the court determined that it lacked jurisdiction and noted that as a result "it would be improper" for the court "to grant a partial summary judgment"). If the Court determines that remand is appropriate, SBS Energy's motion should be denied as moot and the case returned to state court.

**B.    The sole basis of federal jurisdiction is no longer relevant.**

Plaintiff sued Sanare in Texas state court for negligence, gross negligence, premises liability, and wrongful death. *See* Dkt. 1-2, at 3–5. In her original petition, Plaintiff invoked the Savings to Suitors clause, 28 U.S.C. § 1333. *Id.* at 2. Sanare removed the case based on OCSLA. *See* Dkt. 1. Shortly after removal, Plaintiff filed her first amended complaint adding Jones Act and general maritime claims against SBS Energy, Mr. Blanchard's employer.

Several defendants, including Sanare, have settled the claims. Thus, Sanare is no longer in the case and the original basis for removal has been removed. The only claims that remain are Plaintiff's Jones Act and general maritime-based claims against SBS Energy. Now that the original jurisdictional hook has been eliminated, remand is appropriate.

**C.    Plaintiff's Jones Act claims should be remanded.**

As outlined in Plaintiff's first amended petition, Plaintiff's claims arise "under the Jones Act and General Maritime law." *See* Dkt. 11, ¶ 2. Those claims should be remanded to state court. *See Shultz v. Hercules Offshore, Inc.*, No. 1:14-CV-188, 2014 WL 2041282, at *4 (E.D. Tex. May 15, 2014) (severing and remanding Jones Act claims as the claims "are made nonremovable by § 1445(a)"). SBS Energy has challenged Mr. Blanchard's seaman status. But the evidence shows that Mr. Blanchard was a seaman, therefore, Plaintiff is entitled to present her Jones Act and general maritime claims to a state court jury.

Jones Act claims can be brought against three types of entities. *First*, the Jones Act employer for compensatory damages under the Act's "featherweight" standard. *See Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 327 (5th Cir. 2020). *Second*, "the owner of any vessel on which [the seaman was] working for a breach of the warranty of seaworthiness, regardless of whether the vessel is owned by [the] employer." *Becker v. Tidewater*, 335 F.3d 376, 387 (5th Cir. 2003). *Third*, "third parties for general maritime law negligence." *Id.*; accord *Matter of Ingram Barge Co., LLC*, No. 22-30577, 2023 WL 6123107, at *2 (5th Cir. Sept. 19, 2023).

To establish maritime negligence, a plaintiff must demonstrate "a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *Osprey Underwriting Agency, Ltd. v. Nature's Way Marine*, LLC, 642 F. App'x 391, 394 (5th Cir. 2016) (per curiam) (citation, quotation marks, and alteration omitted); *see also Withhart v. Otto Candies, LLC*, 431 F.3d 840, 842 (5th Cir. 2005) ("The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law.").

"The Supreme Court has established a two-pronged test to determine whether a party is a seaman under the Jones Act." *Santee v. Oceaneering Int'l, Inc.*, 110 F.4th 800, 805 (5th Cir. 2024) (internal citations omitted). "To be a seaman: (1) the plaintiff's duties must contribute to the function or mission of the vessel, and (2) the plaintiff must have a connection to the vessel or fleet of vessels that is substantial in duration and in nature." *Id.*

Prong one is satisfied if the worker contributed to the function of or helped accomplish the mission of the vessel. *Alexander v. Express Energy Servs. Operating, L.P.*, 784 F.3d 1032, 1033-34 (5th Cir. 2015) (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995)). This "does not necessarily require that the [seaman] 'aid in navigation or contribute to the transportation of the vessel,' but does require that he 'be doing the ship's work.'" *Id.* (quoting *Chandris*, 515 U.S. at 357). "[T]his threshold requirement is very broad: All who work at sea in the service of a ship are eligible for seaman status." *Chandris*, 515 U.S. at 368 (citations, quotation marks, and emphasis omitted).

To satisfy prong two, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." *Alexander*, 784 F.3d at 1034. The fundamental purpose of the test as stated in *Chandris* is to distinguish land-based maritime employees who have "only a transitionary or sporadic connection to a vessel in navigation" from sea-based workers whose employment "regularly expose[s] them to the perils of the sea." *Chandris*, 515 U.S. at 368; *see also Santee*, 110 F.4th at 805 (the Fifth Circuit has "set out four inquiries relevant to th[e] question: (1) whether the plaintiff is subject to 'the perils of the sea,' (2) whether the plaintiff owes 'his allegiance to the vessel, rather than simply to a shoreside employer,' (3) whether the plaintiff's work is sea-based or involves sea-going activity, and (4) whether the plaintiff's 'assignment to [the] vessel is limited to a discrete task after which [his] connection to the vessel ends.'").

A worker satisfies the "duration" prong when, as a "rule of thumb," he spends at least 30 percent of his "total employment time" in the service of a vessel. *Sanchez v. Smart Fabricators of Tex., LLC*, 997 F.3d 564, 574 (5th Cir. 2021).

Both prongs are satisfied here.

In Plaintiff's first amended complaint, she alleges that when Mr. Blanchard was killed he "was working for Defendant SBS as a Jones Act seaman . . . assigned to the LB SWORDFISH[.]" *See* Dkt. 11, ¶ 9. Mr. Blanchard "had just recently started a new job and spent the vast majority of his time working offshore assigned to the LB SWORDFISH." *Id.* ¶ 10. He slept on the vessel and performed "a substantial amount of his work from the LB SWORDFISH." *Id.*

The evidence bears this out.

To begin, prong one is undisputed: at all relevant times, Mr. Blanchard was contributing to and aiding the vessel to accomplish its mission. *See* Ex. 11: First Report of Illness (indicating that injury occurred "Aboard vessel or over navigable waters"); *see also* Ex. 7: Bray Dep., at 260:22-261:10 (discussing "First Report of Injury") ("Q. So this document is a representation by SBS to the federal government that the incident at issue involving Mr. Blanchard occurred either aboard a vessel or over navigable waters, right? A. Yes.").

As to prong two, the evidence shows that Mr. Blanchard was hired by SBS Energy on March 21, 2022.

**Department and Status Information**

Employee Type: ☑ W2 ☐ 1099    Employee Status: ☑ Active ☐ Terminated ☐ New Hire ☑ Rehire    Hire Dates: 3 / 21 / 22

Position: Supervisor      Worker Comp Code: _____

Ex. 1: Employment Status Form; *see also* Ex. 2: Employment Affidavit; Ex. 3: Time Sheet and Pay Stubs; Ex. 4: Job Logs.

Mr. Blanchard was assigned to work offshore. Ex. 7: Bray Dep., at 77:20-78:23. He spent the first couple days in the office, as was standard. *Id.* at 75:5-15 ("A. . . . all of our employees work in the shop when we're getting equipment ready to mobilize or repairing equipment or just day-to-day, you know."). Following a short stint in the office, Mr. Blanchard's first day offshore was the morning of the 23rd. *See* Ex. 8: Libersat Dep., at 69:20-24; *see also* Ex. 5: Arrival and Departure Log; Ex. 6: Persons on Board. He was killed on the 25th. The evidence shows that Mr. Blanchard spent three of his five days (43 of his 63 hours) on the L/B SWORDFISH, on behalf of SBS Energy working offshore. *See* Ex. 3: Pay Stubs, at App. 10 (showing 20 hours "Onshore/Standby" and 43 hours "Operating" offshore). Notably, the 20 hours not offshore, Mr. Blanchard was not doing any substantive work.

Based on this evidence, the "duration" prong is satisfied in that Mr. Blanchard spent at least half—and certainly more than 30%—of his time with SBS Energy working offshore. *Santee v. Oceaneering Int'l, Inc.*, No. CV H-21-3489, 2022 WL 20742519, at *3 (S.D. Tex. Jan. 27, 2022), reconsideration denied sub nom. *Santee v. Oceaneering Internationa, Inc*., No. CV H-21-3489, 2022 WL 20742688 (S.D. Tex. Apr. 29, 2022) (resolving ambiguity related to duration in seaman's favor); *see also* Ex. 13: Rodrigue

Dep., at 36:22-37:9 ("Q. And so according to this timesheet, Mr. Blanchard spent significantly more than 30 percent of his time offshore at this Sanare Main Pass 64, No. 19 project; correct? A. Yes.").

Although he only worked offshore a few days, Mr. Blanchard's time aboard the L/B SWORDFISH is more than enough time for the duration prong considering multiple courts have noted that even short assignments can be considered "permanent" for seaman status. *See Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067 (5th Cir. 1986); *Foulk v. Donjon Marine Co.*, 144 F.3d 252 (3d Cir. 1998) (holding that a diver who was injured on the first day of a 10-day work project may have had an adequate connection to the vessel such that summary judgment was inappropriate on seaman status); *Stewart v. J.E. Barries, Inc.*, Cause No. 1:06-CV-187-LG-JMR, 2007 WL 2915033 (S.D. Miss. 2007) (holding that it was inappropriate to take the question of duration—and thus seaman status—away from the jury where a worker was injured on the first day of a vessel-related job that was expected to last an additional two to three weeks); *Grab v. Boh Bros. Const., LLC*, 506 F. App'x 271 (5th Cir. 2013) (finding that an iron worker injured on the first day of a bridge project was a Jones Act seaman).

And if there is any question, Mr. Blanchard's offshore time alone qualifies as a "reassignment"—which is also sufficient for Jones Act seaman status. *See*, *e.g.*, *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067, 1075 (5th Cir. 1986); *Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531, 536 (5th Cir. 2015). In his deposition, Mr. Bray admitted that Mr. Blanchard was "reassigned" to work on the Main Pass 64 Well 19 project. *See* Ex. 7: Bray Dep., at 77:20-78:8 ("Q. . . . What I want to just confirm is it sounds like, Mr. Bray, that

14

when Ronnie came back to work for SBS a few days, a week, 10 days before this incident, his first assignment was in the shop before he got reassigned to going and working on the Main Pass 64 Well 19 project? . . . Is that right? A. I think that's right[.]"). In short, no matter how the Court wants to look at Mr. Blanchard's work, his assignment offshore satisfies the "duration" prong.

The evidence also satisfies the "nature" prong. A worker meets the "nature" prong when he adequately demonstrates three principles. *Sanchez*, 997 F.3d at 574.

*First*, a seaman must "owe his allegiance to the vessel, rather than simply to a shoreside employer[.]" *Chandris*, 515 U.S. at 359. *Second*, the worker's work must be "sea-based or involve seagoing activity" that subjects him to the "perils of the sea." *Id.* at 368. *Third*, the worker's assignment to a vessel cannot be "limited to performance of a discrete task after which the worker's connection to the vessel ends[.]" *Sanchez*, 997 F.3d at 574. Rather, it may "include sailing with the vessel from port to port or location to location[.]" *Id.* The third criterion considers a worker's specific "assignment," which must demonstrate "a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of a vessel." *Chandris*, 515 U.S. at 372.

The record here shows that for the relevant period, Mr. Blanchard was hired to help rig up the HWU and work aboard the L/B SWORDFISH. *See* Ex. 8: Libersat Dep., at 70:9-12. Thus, there is no question that Mr. Blanchard owed his allegiance to the vessel for the well work. Indeed, multiple witnesses testified that the SBS Energy workers, including Mr. Blanchard, were staying overnight on the lift boat, eating meals on the lift boat, and going

back and forth from the lift boat to the platform as needed. *See* <u>Ex. 9: Lavergne Dep., at</u> <u>97:5-17</u>; <u>Ex. 10: Lormand Dep., at 105:20-106:14</u>.

> Q. And everyone who was working on this project worked off of the lift boat, right?
>
> A. Yes.
>
> Q. Everyone who was working on this project out at the jobsite slept on the -- I'm sorry, left on the lift boat, true?
>
> A. When they -- yeah, when they were -- when they were working, we -- they were -- they were staying on the boat, on the lift boat.
>
> Q. And they were eating and showering and otherwise living on the boat when they were out there working on this project; is that fair?
>
> A. Yes.

<u>Ex. 10: Lormand Dep., at 130:8-21</u>.

In short, the lift boat provided housing for the SBS Energy crew, a work area for the project, and crane operations for the rigging up process—in other words, he owed his allegiance to the vessel. *See* <u>Ex. 8: Libersat Dep., at 13:12-15</u>.

The evidence also shows that Mr. Blanchard was exposed to the perils of the sea. For example, Kelvin Brereton, an SBS Energy supervisor, admitted that Mr. Blanchard's assignment exposed him to the dangers of offshore work.

> Q. And do you know if Mr. Blanchard's job duties regularly exposed him to sea perils?
>
> A. Yes.
>
> Q. And what I mean -- okay, I'm sorry. You said yes?
>
> A. Yes.
>
> Q. Okay. So back up. Okay, yeah, I asked if you know his job duties regularly exposed him to sea perils. Can you kind of explain how you know that or what you know?

> A. From working together with him.
>
> Q. Okay. And so I asked specifically about sea perils. Can you kind of explain what type of sea perils you believe that Mr. Blanchard's job duties regularly exposed him to?
>
> A. Same offshore, well intervention work.

Ex. 12: Brereton Dep., at 241:3-18.

Based on the evidence, SBS Energy cannot seriously argue that Mr. Blanchard did not face the perils of the sea. Plus, as noted above, when SBS Energy submitted the "First Report of Injury" after the incident, SBS Energy conveyed that Mr. Blanchard's death occurred "Aboard vessel or over navigable waters." Ex. 11: First Report of Injury.

Finally, for the relevant period, the allegations and evidence—that must be taken in Plaintiff's favor—are that Mr. Blanchard was assigned to the L/B SWORDFISH for the duration of the project. Accordingly, Mr. Blanchard's work satisfies the "nature" prong.

**D.      Plaintiff's general maritime claims should also be remanded.**

For similar reasons, Plaintiff's general maritime claims should also be remanded.

Federal courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331. Section 1441(a) allows removal of those civil actions. *See* 28 U.S.C. § 1441(a). But even though section 1333 grants *original* jurisdiction over maritime claims, general maritime claims are not removable under the Savings to Suitors clause absent independent grounds for jurisdiction. *See Mims v. Deepwater Corrosion Services, Inc.*, 90 F. Supp. 3d 679, 689 (S.D. Tex. 2015) ("While federal courts have original jurisdiction over maritime and admiralty claims, such claims do not present a federal question because they do not arise under the Constitution

or laws of the United States."). Indeed, "the Supreme Court has made clear that grant of federal admiralty jurisdiction was not intended to be entirely exclusive." *Gregoire v. Enterprise Marine Services, LLC*, 38 F. Supp. 3d 749, 755 (E.D. La. 2014) (citations omitted).

To clarify, "[m]aritime claims initiated in state court are, by definition, brought at common law under the saving to suitors clause as an 'exception' to the original jurisdiction of the federal courts." *Id.* at 764. In other words, maritime claims "filed in state court under the Savings to Suitors Clause" are "transformed into [cases] at law, as opposed to admiralty." *Belanger*, 2019 WL 5595452, at *1. Thus, absent another basis for removal, general maritime claims filed in state court cannot be removed. *Mims*, 90 F. Supp. 3d at 686.

As shown above, Plaintiff has brought claims against SBS Energy under the Jones Act and the general maritime law. Like her Jones Act claims, Plaintiff's general maritime claims are properly heard in state court considering there is no other jurisdictional grounds to keep the case here. *See Jackson v. Am. Bureau of Shipping*, No. CV H-20-109, 2020 WL 1743541, at *2 (S.D. Tex. Apr. 8, 2020) ("absent other jurisdictional grounds, maritime claims filed in state court under the Savings to Suitors Clause are not removable."). Those claims should also be remanded.

**E.      SBS Energy has the burden to establish federal jurisdiction.**

"Federal courts are courts of limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). They "must presume that a suit lies outside this limited jurisdiction[.]" *Id.* It is well established that "the burden of establishing federal jurisdiction

rests on the party seeking the federal forum." *Id.*; Here, SBS Energy will have the burden to show that this Court can exercise jurisdiction over Plaintiff's Jones Act and general maritime claims.

**F.      Alternatively, there is no diversity.**

If there is any question as to whether the Court has jurisdiction over Plaintiff's claims against SBS Energy, besides the Jones Act and general maritime claims which require remand, Plaintiff notes that there is no diversity between the parties making remand even more appropriate. It is undisputed that both Plaintiff and SBS Energy are Louisiana residents. Thus, SBS Energy will not be able to argue that this Court has diversity jurisdiction. For this additional reason, the Court should grant Plaintiff's motion to remand.

**CONCLUSION**

The Court should remand this case to state court.

Respectfully submitted,

**ARNOLD & ITKIN LLP**

*/s/ Roland Christensen*
Kurt Arnold
SBN: 24036150
karnold@arnolditkin.com
Caj Boatright
SBN: 24036237
cboatright@arnolditkin.com
Roland Christensen
SBN: 24101222
rchristensen@arnolditkin.com
Adam Lewis
SBN: 24094099
alewis@arnolditkin.com

6009 Memorial Drive
Houston, TX  77007
Tel: 713.222.3800
Fax: 713.222.3850
e-service@arnolditkin.com
rolandteam@arnolditkin.com

- and -

**DRENNAN LANGDON & FIDEL, LLP**

Joe Drennan
SBN: 24080652
joe@dlflawfirm.com
Wendell H. Langdon, III
SBN: 24080116
wlangdon@dlflawfirm.com
1001 Main Street, Suite 706
Lubbock, TX 79401

**ATTORNEYS FOR PLAINTIFFS**

A true and correct copy of the foregoing has been forwarded to the following counsel of record on this the 12th day of September 2025.

*/s/ Roland Christensen*
Roland Christensen